# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SALVATORE VACCARO, individually and on behalf of others similarly situated, ) ) ) Plaintiff, ) ) v. ) ) TICKETMASTER, L.L.C., ) ) Defendant. ) | Case No. JURY DEMANDED |

## CLASS ACTION COMPLAINT

NOW COMES Plaintiff, SALVATORE VACCARO (hereinafter "Vaccaro" or "Plaintiff"), individually and on behalf of the proposed class, by and through his attorneys, Blaise & Nitschke, P.C., and submits his class action complaint against TICKETMASTER, L.L.C. (hereinafter "TICKETMASTER" or "Defendant"). In furtherance whereof, Plaintiff states as follows:

## NATURE OF THE CASE

1. This is a consumer class action based upon Defendant's violations of the Illinois Consumer Fraud and Deceptive Business Practice Act, 815 ILCS 505/1, *et seq*. and violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2, *et seq*. Specifically, Defendant is reselling (on its secondary exchange) the same tickets that it sold initially to resellers (on its primary exchange), thereby collecting multiple commissions per ticket, and even apparently creates and distributes "doubledip bots" to resellers to allow them to purchase or repost these tickets automatically which ultimately artificially inflates the prices to consumers.

1

## PARTIES

2. Plaintiff, SALVATORE VACCARO, is an individual, and at all times mentioned in this Complaint, was domiciled in Cook County, Illinois.

3. Defendant, TICKETMASTER, LLC., is a Foreign Limited Liability Company registered to conduct business in the State of Illinois and maintains a registered agent for service of process in the State of Illinois, namely Corporate Creations Networks, Inc., located at 350 S. Northwest Highway #300, Park Ridge, Illinois.

## JURISDICTION AND VENUE

4. This Court has diversity jurisdiction under 28 U.S.C. §1332 (a) because the parties are citizens of different states and the amount in controversy exceeds the sum or value of $75,000.00.

5. Venue is appropriate in the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. §1391 (b) because a substantial part of the events giving rise to the claims occurred in this judicial district.

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1367, which gives the district court supplemental jurisdiction over state law claims.

## STATEMENT OF FACTS

7. TICKETMASTER, along with its affiliates and parent company, Live Nation Entertainment ("LNE"), exerts an overwhelming dominance over all aspects of the live event market. Prior to its merger with Live Nation, to create LNE, the Department of Justice found that for primary event ticketing, TICKETMASTER had maintained a market share of over 80% for more than 15 years. The DOJ noted that Live Nation was the first real challenge to TICKETMASTER's hegemony, and TICKETMASTER responded by seeking to purchase Live

Nation and squelch that competition. Despite the overwhelming case for anticompetitive risk, the merger was allowed in 2010 based upon TICKETMASTER and Live Nation entering into a consent decree to avoid anticompetitive conduct. Eight years later, the DOJ is reportedly investigating LNE based on substantial evidence of precisely such anticompetitive behavior. (https://www.nytimes.com/2018/04/01/arts/music/live-nation-TICKETMASTER.html) This anticompetitive conduct under investigation includes attempts to use control over one market (concert tours) to pressure venues to use TICKETMASTER for another market (primary ticketing). Rather than seeking to create a balanced playing field for consumers, TICKETMASTER and its family of companies have consistently abused their market power to obtain excessive profits at the expense of the consumer.

8. The TICKETMASTER merger hearings in 2009 included testimony that, "The amalgamation of these two companies into one should make them the poster child for why this country needs antitrust laws." (http://articles.latimes.com/2009/feb/25/business/fi-TICKETMASTER25. )Now, the chief of the New York Attorney General's Antitrust Bureau confirms that, "The [TICKETMASTER/Live Nation merger] Consent Decree… is now widely seen as the poster child for the problems that arise when enforcers adopt these temporary fixes to limit the anticompetitive effects of deeply problematic vertical mergers." (https://www.nytimes.com/2018/04/01/arts/music/live-nation-TICKETMASTER.html)

9. But TICKETMASTER's abuse of its market position goes beyond its touring influence. TICKETMASTER has dramatically expanded its secondary ticket exchanges – ticket reselling operations – which now generate billions in annual sales according to TICKETMASTER's public releases. These exchanges primarily involve resales of tickets that were originally sold on TICKETMASTER through its primary exchange, thus setting up a

3

perverse set of financial incentives for TICKETMASTER and its supplier clients. As early as 2009, TICKETMASTER was investigated by the FTC for deceptive bait-and-switch tactics to gouge consumers. Among allegations were that TICKETMASTER employed misleading web pages to redirect consumers to its secondary ticket exchanges, claims that TICKETMASTER settled by agreeing to refund consumers moneys from excessive ticket prices.

10. Indeed, the New York Attorney General investigated ticket sales to major concerts in New York, and found that 54 percent of tickets were not made available to the general public by the supplier, held back for insiders, special groups, or other non-public sales.

11. As recent, expose revealed that TICKETMASTER engages in the business practice of not enforcing its own terms of use for commercial re-sellers in that TICKETMASTER encourages resellers to purchase excess numbers of tickets in order to sell out of TICKETMASTER shows and artificially inflate the prices of the tickets in the secondary market to the detriment of consumers. In essence, TICKETMASTER is artificially affecting supply and demand to the detriment of consumers. (https://www.cbc.ca/news/business/a-public-relations-nightmare-TICKETMASTER-recruits-pros-for-secret-scalper-program-1.4828535)

12. The rapid expansion of TICKETMASTER's secondary market sales numbers is critical to understanding TICKETMASTER's incentive to foster the use of its system by ticket resellers. When TICKETMASTER sells a ticket to a reseller, it not only collects the full commission from that primary sale, but it has a significantly higher chance of that ticket being placed on one of its secondary ticket exchanges – after all, resale is what resellers do. TICKETMASTER then receives a second, "double-dip" commission on the resale of that ticket. TICKETMASTER's ticket listings for popular shows are often dominated by tickets on its resale exchange – tickets which originally came from its primary exchange and thus for which it is

4

getting double-dip commissions. Since ticket resellers are by definition more likely to resell tickets than other members of the public, and are a dominant source of tickets for TICKETMASTER's resale exchanges, TICKETMASTER resale business depends on TICKETMASTER selling primary tickets to resellers and TICKETMASTER stands to make significantly more commissions by selling to resellers than to other members of the public.

13. Moreover, by encouraging artificial "sold out" events, TICKETMASTER is artificially affecting supply and demand to the detriment of consumers, like Plaintiff, who are forced to buy tickets at artificially inflated prices over original face value.

14. Upon information and belief, TICKETMASTER has actually provided automated programs to ticket resellers in order to allow them to purchase tickets from TICKETMASTER or immediately post those tickets to TICKETMASTER's own secondary exchange for resale faster and in automated fashion. Such "double-dip bots" created and distributed by TICKETMASTER for use on its own ticketing system not only belie the false narrative that TICKETMASTER offers concerning attempts to stop bots or ticket resellers from purchasing tickets, but also evidence TICKETMASTER's use of its overwhelming primary ticket exchange market power to control the secondary ticket market as well.

15. To be clear, often TICKETMASTER is reselling (on its secondary exchange) the same tickets that it sold initially to resellers (on its primary exchange), thereby collecting multiple commissions per ticket, and even apparently creates and distributes "doubledip bots" to resellers to allow them to purchase or repost these tickets automatically. The disingenuousness of TICKETMASTER's complaints about sales to ticket resellers is stark. TICKETMASTER's website generally contains seating maps that integrate tickets from its primary exchange and its secondary exchange into a single map for each event. Primary exchange ticket availability is

5

commonly shown by blue dots on the map, and secondary ticket exchange availability is commonly shown by pink dots on the map, all of which are shown side by side on the same seating map. TICKETMASTER can sell a blue dot primary exchange ticket to a reseller, collect a commission, and immediately turn the blue dot into a pink dot (likely with a different price), and collect a double-dip commission on that resale – of the same seat to the same event using the same website. The "double-dip bots" that TICKETMASTER provides to resellers automates this process to make it faster, and to crowd out competition from other secondary exchanges. Of course, this windfall is far less likely if a ticket is sold to a non-reseller consumer, who would be of course less likely to resell the ticket.

16. TICKETMASTER even sabotages its Verified Fan program, which it publicizes as a means to provide special advance tickets to a special set of consumers with codes, by releasing the same tickets for sale simultaneously at the box office, without requiring any special code, and with full knowledge that ticket resellers will staff the box office to purchase the tickets immediately.

17. Notably, for many events sold through TICKETMASTER, the terms of purchase limit resale to TICKETMASTER's own resale exchanges, an attempt to further ensure a double-dip commission whenever a reseller purchases a ticket. Suppliers such as venues can share in these double-dip commissions, depending on the provisions in their deals with TICKETMASTER.

18. An event that is priced below market may even enhance profits through the engagement of ticket resellers – who can purchase large quantities of tickets, providing valuable risk insurance against unsold seats and also providing double-dip commissions on the expected resale.

19. On information and belief, TICKETMASTER also utilizes its primary ticket market power to squelch competition in the secondary ticket market by expediting the issuance of final tickets with bar codes when tickets purchased on TICKETMASTER's primary exchange are offered for resale on TICKETMASTER's secondary exchange, something that it does not do when tickets are offered for resale on any other exchange.

20. On information and belief, TICKETMASTER also manages its primary ticket exchange website, and selectively asserts legal and contractual rights and claims relating thereto, in order to gain control of the secondary ticket market. TICKETMASTER has information sufficient to identify the accounts of virtually all ticket resellers, but knowingly allows such activity to continue, despite its claim that such activity violates its TOU, so long as TICKETMASTER sees double-dip commissions through placement of resale listings on TICKETMASTER's own secondary exchanges, as well as other benefits. On information and belief, TICKETMASTER only selectively seeks to press alleged TOU breaches against non-favored resellers that use different secondary market exchanges.

21. TICKETMASTER's ticket reselling business has been and is in direct harm to consumers, including Plaintiff. TICKETMASTER does this by, inter alia, seeking to block its secondary market competitors from accessing the primary ticket exchange, which TICKETMASTER largely controls in the United States. While claiming that the business of ticket reselling is somehow harmful to the public, TICKETMASTER wants to simply suppress its competition in the secondary market, growing its market share, obtaining more double-dip commissions for each seat, and ultimately increasing its profits and market power.

22. Even beyond the FTC investigation that forced TICKETMASTER to settle claims of its deceptive bait-and-switch sales tactics to gouge consumers (https://www.ftc.gov/news-

events/press-releases/2010/02/TICKETMASTER-ticketsnow-settle-ftc-charges-deceptive-sales ), and the class action lawsuit that forced TICKETMASTER to enter into a $400 million settlement in 2014 based on over a decade of wildly overcharging consumers for "order processing" and delivery fees (Order Preliminarily Approving Class Action Settlement, Schlesinger v. TICKETMASTER, No. BC 304565 (L.A. Super. Ct., April 30, 2014)), and the current U.S Department of Justice investigation into TICKETMASTER and its corporate family's anticompetitive conduct (https://www.nytimes.com/2018/04/01/arts/music/live-nation-TICKETMASTER.html) , TICKETMASTER's outsized profits are built on using its excessive market power to stifle competition and unfairly exact additional fees to line its pockets.

23. Plaintiff is a consumer who was forced to purchase tickets from a second hand ticket exchange on numerous occasions over the three-year period before the filing of this Complaint. For example, Plaintiff has purchased "sold-out" TICKETMASTER tickets in the secondary market at an increased price over original TICKETMASTER face value from secondary-sellers on websites, including but not limited to: www.goldcoasttickets.com and www.stubhub.com.

24. To the extent that TICKETMASTER asserts that any waiver of class action claims and/or enforcement of arbitration clause(s) are applicable to the allegations contained in this Complaint, Plaintiff contends that such provisions should not be enforceable upon Plaintiff as a result of TICKETMASTER'S non-compliance with its own TERMS OF USE and/or void as against public policy as a result of TICKETMATER'S fraudulent and/or or deceptive business practices to the detriment of consumers.

**COUNT I (Class)**
**Violation of the Illinois Consumer Fraud and Deceptive Business Practice**
**815 ILCS 505/1,** *et seq***.**

25. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this Complaint.

26. Plaintiff brings this claim individually and on behalf of the following putative class:

> **All persons with Illinois addresses who purchased tickets off a secondary ticket exchange wherein the tickets were first offered on Ticketmaster.com within the past three years from September 26, 2015 through September 26, 2018.**

27. The Class is so numerous that joinder of all individual members in one action would be impracticable, given the expected Class size and modest value of individual claims.

28. On information and belief, there are more than 1,000 persons meeting the above-referenced Class definition. Class members can be identified through Defendant's records.

29. Plaintiff's claims are typical of the claims of the Class members, as they are based on the same legal theory and arise from the same unlawful conduct.

30. There are common questions of law and fact affecting members of the Class, which common questions predominate over questions that may affect individual members. These common questions include, but are not limited to:

    a. Whether Defendant obscures information about ticket availability and misrepresents the provenance of tickets on its website in order to obscure that it is selling secondary market tickets at different prices than face value and that were obtained with the knowledge of TICKETMASTER by reseller entities using Ticket Purchasing Software;

    b. Whether by encouraging artificial "sold out" events, Defendant is artificially affecting supply and demand to the detriment of consumers, like Plaintiff,

    who are forced to buy tickets at artificially inflated prices over original face value.;

  c. Whether Defendant entices users to its website with the false promise and representation that it is offering primary tickets to events at face value, when (a) TICKETMASTER's intention and practice is to knowingly allow ticket resellers to purchase the event primary inventory or (b) TICKETMASTER knows that the supplier is not making a significant portion of the primary inventory available to the public, which TICKETMASTER does not disclose to the public;

  d. Whether TICKETMASTER offers to the users that it lures tickets from its secondary exchange, at different prices and providing a double-dip commission to TICKETMASTER.

31. Plaintiff will fairly and adequately represent the Class members. Plaintiff has no interests that conflict with the interests of Class members. Plaintiff has retained counsel experienced in handling consumer cases and class actions. Neither Plaintiff nor his counsel has any interests that might cause them not to pursue these claims vigorously.

32. This action should be maintained as a class action because the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual members that would establish incompatible standards of conduct for the parties opposing the Class.

33. That at all times relevant herein, there existed in full force and effect the Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1 *et seq*. (hereinafter "The Act").

34. The Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq*. makes it unlawful to employ:

> "[u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact … in the conduct of any trade or commerce."

815 ILCS 505/2.

35. As detailed throughout Plaintiff's Complaint, TICKETMASTER, has committed acts of unfair competition in performing the acts described herein and failing to perform the acts described herein because these practices were unfair, unlawful, and/or fraudulent.

36. TICKETMASTER selectively uses its so-called security measures and claims of rights under contract and copyright in connection with its primary ticket exchange in order to gain control of the secondary ticket market and obtain double-dip commissions.

37. TICKETMASTER obscures information about ticket availability and misrepresents the provenance of tickets on its website in order to obscure that it is selling secondary market tickets at different prices than face value and that were obtained with the knowledge of TICKETMASTER by reseller entities.

38. TICKETMASTER entices users to its website with the false promise and representation that it is offering primary tickets to events at face value, when (a) TICKETMASTER's intention and practice is to knowingly allow ticket resellers to purchase the event primary inventory or (b) TICKETMASTER knows that the supplier is not making a significant portion of the primary inventory available to the public, which TICKETMASTER does not disclose to the public. Rather, TICKETMASTER instead offers to the users that it lures tickets from its secondary exchange, at different prices and providing a double-dip commission

11

to TICKETMASTER. The allegations of this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

39. TICKETMASTER uses the information that it tracks in its primary ticket exchange about activities of so-called "irregular" users that it determines are resellers or are using Ticket Purchasing Software on its website, and uses that information to expand its secondary exchange market power. The allegations of this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

40. By encouraging artificial "sold out" events, TICKETMASTER is artificially affecting supply and demand to the detriment of consumers, like Plaintiff, who are forced to buy tickets at artificially inflated prices over original face value.

41. TICKETMASTER's above representations are made as part of a plan or scheme with the knowledge and intent that it will not be selling tickets or providing the services as so advertised, but rather in a different manner that is more profitable for TICKETMASTER (e.g., via double-dip commissions and/or artificial secondary market tampering) and more costly to consumers. The allegations of this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

42. As a proximate cause of Defendants unfair business practices as alleged herein, Defendants have suffered an injury in fact having lost or deprived of money or property in an amount to be proven at trial. TICKETMASTER's conduct in violation of 815 ILCS § 505/1 et seq has caused and continues to cause actual and substantial damage to Plaintiff individually and on behalf of the proposed Class. TICKETMASTER's unfair practices have significantly injured Plaintiff and the proposed class, including by refusing to sell directly to the consumer, diverting the consumer to second hand ticket exchanges, and benefiting as a result of double dip

commissions, and artificially inflating ticket prices in the secondary market all as a result of TICKETMASTER's misrepresentations, unfair practices, and abuse of its primary ticket exchange market power.

43. TICKETMASTER's unfair, unlawful, or fraudulent acts and practices present a continuing threat to Plaintiffs and to members of the public in that these acts and practices are ongoing and are harmful and disruptive to consumers and ticket-sales markets.

44. As a direct and proximate result of the aforementioned acts and practices, TICKETMASTER has taken and received and continues to hold, as ill-gotten gains, monies owing to and owned by consumers, which should be restored to its rightful owners, Plaintiff and the proposed class.

45. TICKETMASTER's unfair competitive practices are ongoing, continue to the present, and will continue unless relief enjoining these practices is granted. Plaintiffs have no adequate remedy at law as to TICKETMASTER'S ongoing practices.

## COUNT II (Class)
### Violation of the Illinois Uniform Deceptive Trade Practices Act
### 815 ILCS 510/2, *et seq*.

46. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this Complaint.

47. Plaintiff brings this claim individually and on behalf of the proposed class against Defendant.

48. The Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2, *et seq*. makes it unlawful to "cause likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services." 815 ILCS 510/2(a)(2). It is also

unlawful to cause likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by another." 815 ILCS 510/2(a)(3).

49. The Illinois Uniform Deceptive Trade Practices Act makes it unlawful to "advertise goods or services with intent not to sell them as advertised." 815 ILCS 510/2(a)(9). It is also unlawful to "engage in any other conduct which similarly creates a likelihood of confusion or misunderstanding." *Id.* at (a)(12).

50. As detailed throughout Plaintiff's Complaint, TICKETMASTER obscures information about ticket availability and misrepresents the provenance of tickets on its website in order to obscure that it is selling secondary market tickets at different prices than face value and that were obtained with the knowledge of TICKETMASTER by reseller entities using Ticket Purchasing Software.

51. Defendant violated Section 510/2 of the Illinois Uniform Deceptive Trade Practices Act by misrepresenting the amount of tickets TICKETMASTER had for sale on its primary ticket exchange. TICKETMASTER's misrepresentations about its quantity of tickets described throughout this Complaint created a likelihood of confusion on the part of consumers regarding how many tickets are on the primary ticket exchange website.

52. Plaintiff and the proposed class were damaged by TICKETMASTER's violation and their subsequent purchases of tickets on second hand ticket exchanges. Plaintiff and the proposed class would not have purchased tickets on the second hand exchange or paid the price they did, had the true facts been known.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff SALVATORE VACCARO, individually and on behalf of the proposed class, by and through his attorneys, Blaise & Nitschke, P.C., prays this Court enter

judgment in favor of Plaintiffs and against Defendant, TICKETMASTER, L.L.C. in an amount to be proven at trial and such other relief as the Court deems just, proper, and equitable, including but not limited to compensatory damages, consequential damages, punitive damages, pre-judgment interest, costs and expenses of suit, such reasonable attorneys' fees as the law may permit, and such other and further relief as this court deems appropriate.

## JURY DEMAND

Plaintiffs respectfully demands a trial by jury of all matters so triable.

## DOCUMENT PRESERVATION DEMAND

Plaintiff hereby demands that each defendant take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to plaintiff, the events described herein, any third party associated with any ticket purchase from plaintiff. These materials are likely very relevant to the litigation of this claim. If defendant is aware of any third party that has possession, custody, or control of any such materials, plaintiff demands that defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the defendant.

## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

    Respectfully submitted,
    Plaintiff, Salvatore Vaccaro,

By:    */s/ Heather L. Blaise*
      One of his attorneys

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on September 26, 2018, she caused the foregoing instrument to be electronically filed with the Clerk of the United States District Court for the Northern District of Illinois using the CM/ECF system.

          */s/ Heather L. Blaise*
          Heather L. Blaise

**Blaise & Nitschke, P.C.**
123 N. Wacker Drive, Suite 250
Chicago, Illinois 60606
T: (312) 448-6602
F: (312) 803-1940
hblaise@blaisenitschkelaw.com
ARDC No. 6298241